**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  11-60248-CIV-ALTONAGA/Simonton**

**FRANKLIN VASQUEZ**,

      Plaintiff,

vs.

**YII SHIPPING COMPANY LIMITED**,

      Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendant, YII Shipping Company Limited's

("YII Shipping['s]) Renewed Motion to Dismiss (the "Motion") [ECF No. 49], filed August 15,

2011.  The Court has considered the parties' submissions and the applicable law.

### I.  BACKGROUND[1]

Plaintiff Franklin Vasquez ("Vasquez"), a resident of the Dominican Republic, is a

"seaman" as defined in 28 U.S.C. § 1916.  (Compl. ¶¶ 1–2 [ECF No. 1]).  Vasquez was

employed by Defendant YII Shipping.  (*See id.* ¶ 7; Vaughn Higgs Aff. ¶ 2 [ECF No. 14-3]).

YII Shipping is a Bahamian corporation with its principal place of business in Nassau, The

Bahamas.  (*See* Am. Final Order Granting YII Shipping Company Limited's Mot. to Dismiss

with Prejudice on the Basis of *Forum Non Conveniens*, Mot. Exs. 1, 2 [hereinafter "Fla. Order"]

[ECF No. 14-1]; V. Higgs Aff. ¶ 3).  While employed by Defendant, Vasquez served on the YII

Shipping-owned vessel, the M/V Yeocomico, a Honduran-flagged cargo ship.  (*See* Compl. ¶¶

---

[1]  "In deciding a motion to dismiss for *forum non conveniens*, courts are not limited to the pleadings and may consider the parties' submissions of proof in support [of] or opposition to the motion."  *Pinder v. Moscetti*, 666 F. Supp. 2d 1313, 1316 (S.D. Fla. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258–59 (1981)).

6–7; Fla. Order 1–2; V. Higgs Aff. ¶ 4).  The M/V Yeocomico's crew was "composed entirely of foreign nationals, from the Bahamas, Dominican Republic and the Philippines," with no United States or Florida residents.  (Fla. Order 2).  During the two years prior to Plaintiff's injury, the M/V Yeocomico "sailed exclusively in Bahamian waters in inter-island cargo traffic."  (*Id.*).  During that period, the M/V Yeocomico never sailed in U.S. waters.  (*See id.*).  In fact, the M/V Yeocomico has not sailed in U.S. waters or serviced U.S. ports since 2005.  (*See* V. Higgs Aff. ¶ 4; Vaughn Higgs Dep. 56:18–57:2, July 23, 2008 [ECF No. 65-2]; Fla. Order 2; Mot. Opp'n Exs. 12, 13 [ECF Nos. 61-12, 61-13]; Augusto Maldonado Dep. 7:19–8:6, Nov. 20, 2009 [ECF No. 62-6]; Franklin Vasquez Dep. 13:4–21, Jan. 9, 2008 [ECF No. 65-1]).  As a result, Mr. Vasquez had not sailed to the United States or Florida since 2005.  (*See* Vasquez Dep. 13:18–21).

On June 21, 2007, while the M/V Yeocomico was in Bahamian territorial waters, during a regular inter-island sail, Plaintiff was injured.  (*See* Compl. ¶¶ 17, 19; Fla. Order 2; Higgs Aff. ¶ 5; Vasquez Dep. 15:20–21).  While the M/V Yeocomico was docked in Freeport, The Bahamas, Vasquez was cutting metal with an acetylene gun.  (*See* Compl. ¶ 19).  After the gun stopped working correctly, Vasquez attempted to remedy the problem by opening the acetylene tank's valve to allow greater gas flow.  (*See id.*).  After fiddling with a valve, the tank exploded, severely burning Vasquez's left arm, left ear, and the left side of his mouth.  (*See id.*).

After Plaintiff was injured, he was treated on Berry Island, The Bahamas.  (*See* Fla. Order 2).  Later, he was treated in Nassau, The Bahamas.  (*See id.*).  Following Plaintiff's treatment in The Bahamas, he returned to the Dominican Republic, where his treatment continued.  (*See id.*).  Plaintiff then secured legal counsel in Miami, and he came here "to see two physicians for a single evaluation on the same day."[2]  (*Id.*).  After the evaluation, Mr. Vasquez

---

[2]  It appears Vasquez saw doctors in Miami on his family's advice.  (*See* Vasquez Dep. 67:17–69:2).

returned to the Dominican Republic.  (*See id.*).

This is the second time this suit has been filed.  Plaintiff originally sued YII Shipping, based on these same facts, in Florida state court.  (*See* Compl. ¶ 11; *see generally* Fla. Order). The Florida court dismissed the case on June 8, 2009 based on *forum non conveniens*.  (*See* Compl. ¶ 12; *see* Fla. Order 11–12).  The dismissal was affirmed by the Florida Fourth District Court of Appeal.  *See Vasquez v. YII Shipping Co.*, 46 So. 3d 1235 (Fla. 4th DCA 2010).

After the state-court dismissal was final, Plaintiff filed this federal suit based on the same operative facts.  (*See* Compl.).  The Complaint raises four claims: (1) Jones Act negligence, (2) unseaworthiness, (3) failure to provide maintenance and cure, and (4) failure to treat.  (*See id.* ¶¶ 16–40).[3]  Defendant now moves to dismiss the Complaint principally on the grounds of *forum non conveniens* and preclusion.  (*See generally* Mot.).

## II.  ANALYSIS

### A.  Introduction

The doctrine of *forum non conveniens* allows courts to decline jurisdiction over a case, even if personal jurisdiction and venue are proper, if it appears the interests of justice require the case to be tried in another forum.  *See Am. Dredging Co v. Miller*, 510 U.S. 443, 447–48 (1994) (citations omitted).  The Eleventh Circuit requires that a court conduct a two-pronged inquiry to determine whether it should dismiss maritime claims under the doctrine of *forum non conveniens*.  *See Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir. 1983). First, the court must decide, under choice of law principles, whether it should apply United States law to the case.  *See id.*  If so, the court should not dismiss the case for *forum non conveniens*.  *See id.*  Second, if the court finds that United States law does not apply, it analyzes

---

[3]  These are the identical claims Vasquez asserted in the Florida suit.  (*See* Supplemental Reply Ex. 1 [ECF No. 71-1]).

traditional *forum non conveniens* considerations to determine whether a foreign forum is a more appropriate venue.  *See id.*

    1.  *Lauritzen/Rhoditis*

Because the Plaintiff alleges Jones Act negligence (*see* Compl. ¶¶ 5, 16–23), before considering the traditional *forum non conveniens* analysis, the Court must address the *Lauritzen/Rhoditis* choice-of-law question, that is, whether the Jones Act applies.[4]  The Supreme Court has outlined eight factors for determining whether or not the Jones Act is applicable.  *See Fantome, S.A. v. Frederick*, No. 02-10890, 2003 WL 23009844, at *2 (11th Cir. Jan. 24, 2003) (citing *Lauritzen v. Larsen*, 345 U.S. 571, 583–91 (1953), and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09 (1970)).  The eight factors are:

---

[4]  Vasquez states that if U.S. law applies, the Court "must" deny Defendant's Motion.  (Mot. Opp'n 2 [ECF No. 61]).  He cites three cases in support, asserting it is *mandatory* that when U.S. law applies, a *forum non conveniens* motion must be denied.  (*Id.*) (citing *Szumlicz*, 698 F.2d at 1195; *Membreno v. Costa Crociere, S.p.A.*, 347 F. Supp. 2d 1289, 1292 (S.D. Fla. 2004); and *Williams v. Cruise Ships Catering*, 299 F. Supp. 2d 1273, 1277 (S.D. Fla. 2003)).  The relevant language, which comes from *Szumlicz* states, "If United States law applies, the case *should* not be dismissed for *forum non conveniens*."  *Szumlicz*, 698 F.2d at 1195 (emphasis added).

    The Eleventh Circuit has described the word "should" as permissive, and not mandatory.  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196–97 (11th Cir. 2008).  In *Lambert*, the Eleventh Circuit explained:

> [T]he language suggesting that employees "should" consult with a facilitator is phrased using permissive, rather than mandatory, language.  The word "should" means "usually no more than an obligation of propriety or expediency, or a moral obligation . . . .  [I]t does not ordinarily express certainty as 'will' sometimes does."  Black's Law Dictionary 1379 (6th ed. 1990).  Indeed, courts from other jurisdictions have specifically held that the word "should" is permissive, and not mandatory.  *See e.g.*, *United States v. Messino*, 382 F.3d 704, 711 (7th Cir. 2004) (finding that a change of jury instructions from "may find" to "should find" had no effect because "[e]ither wording is permissive, not mandatory.  'Should' may be stronger than 'may' but the difference, in practice, is meaningless."); *Atla-Medine v. Crompton Corp.*, 2001 WL 1382592 (S.D.N.Y. 2001) (finding that a statement that parties "should negotiate the terms and conditions" was not a promise because " 'should' is permissive, not mandatory.").

*Lambert*, 544 F.3d at 1197.

> (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the shipowner; (5) the place where the shipping articles were signed; (6) the accessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

*Id.* (citing *Lauritzen*, 345 U.S. at 583–91, and *Rhoditis*, 398 U.S. at 309).[5]  The final *Lauritzen* factor, law of the forum, "is entitled to little weight because 'fortuitous circumstances . . . often determine the forum.'"  *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985).

The eight factors are not "exhaustive" and are not meant to be mechanically applied. *Fantome*, 2003 WL 23009844, at *2 (citing *Rhoditis*, 398 U.S. at 308–09).  In *Rhoditis*, the Supreme Court quoted the Second Circuit with approval in describing the process of weighing the factors:

> "(T)he decisional process of arriving at a conclusion on the subject of the application of the Jones Act involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial.  Thus each factor is to be 'weighed' and 'evaluated' only to the end that, after each factor has been given consideration, a rational and satisfactory conclusion may be arrived at on the question of whether all the factors present add up to the necessary substantiality."

*Rhoditis*, 398 U.S. at 309 n.4 (quoting *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 441 (2d Cir. 1959)).  As is explained below, when considering these factors and undertaking this process, the Court is bound by the factual and legal findings made by the Florida court that were essential to its determination.

### 2. Traditional *Forum Non Conveniens* Analysis

The Supreme Court has "characterized *forum non conveniens* as, essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in

---

[5]  The eighth factor was not listed in *Lauritzen*, but was added later in *Rhoditis*.  *See Rhoditis*, 398 U.S. at 309; *Fantome*, 2003 WL 23009844, at *2.

light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'"
*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am.
Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)).  "The doctrine of *forum non conveniens*
permits a court with venue to decline to exercise its jurisdiction when the parties' and court's
own convenience, as well as the relevant public and private interests, indicate that the action
should be tried in a different forum."  *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th
Cir. 2009); *see also Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV, 2007 WL
3054986, at *3 (S.D. Fla. Oct. 16, 2007) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07
(1947)).  "This tool 'is to be favored' for ensuring that federal courts only hear 'those cases
where contacts with the American forum predominate.'"  *Aldana*, 2007 WL 3054986, at *3
(quoting *Sigalas*, 776 F.2d at 1519 n.10).

At the outset of a *forum non conveniens* analysis, there is a strong presumption in favor
of the plaintiff's initial forum choice.  *See Gulf Oil*, 330 U.S. at 508 (finding "unless the balance
[of interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be
disturbed").  The presumption in favor of the plaintiff is strongest when the plaintiff is a citizen
or resident of the United States.  *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica,
S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (citation omitted).  Courts provide less deference to a
foreign plaintiff's choice of forum than that of a domestic plaintiff.  *See Piper Aircraft Co. v.
Reyno*, 454 U.S. 235, 256 (1981); *see also Sinochem Int'l*, 549 U.S. at 430 ("When the plaintiff's
choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less
force,' for the assumption that the chosen forum is appropriate is in such cases 'less
reasonable.'" (quoting *Piper Aircraft*, 454 U.S., at 255–56)).

The federal and Florida state courts use an identical traditional *forum non conveniens*

test.[6] *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1289 (11th Cir. 2009).

"Indeed, the Florida Supreme Court has explicitly adopted the federal law of *forum non*

*conveniens*." *Id.* (citing *Kinney Sys., Inc. v. Cont'l Ins. Co.*, 674 So. 2d 86, 93 (Fla. 1996)).

Although the factors considered are the same, the essential difference between the Florida *forum*

*non conveniens* inquiry and the federal inquiry is that a Florida state court focuses on the suit's

connections with Florida, while a federal court focuses on the suit's contacts with the entire

United States. *See Callasso v. Morton & Co.*, 324 F. Supp. 2d 1320, 1325 (S.D. Fla. 2004).

In determining whether to dismiss a case based on the doctrine of *forum non conveniens*,

the Court must: (1) decide whether an adequate alternative forum exists which has jurisdiction

over the case, (2) weigh the private interest factors of the parties with a presumption in favor of

the plaintiff's initial forum choice, (3) if the balance of private interests is at or near equipoise,

determine if the factors of public interest favor a trial in the foreign forum, and (4) assess

whether the plaintiff can reinstate suit in the alternative forum without undue inconvenience or

prejudice. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001); *Aldana*, 578

F.3d at 1289–90 (quoting *Del Campo Bacardi v. de Lindzon*, 845 So. 2d 33, 36 n.1 (Fla. 2002));

*see also* FLA. R. CIV. P. 1.061(a). The private interests courts consider are: (a) the relative ease

of access to sources of proof; (b) the cost of obtaining the attendance of willing witnesses and the

ability to compel the attendance of unwilling witnesses; (c) the possibility of viewing the

premises, if a view would be appropriate to the action; (d) the enforceability of a judgment in a

forum; and (e) all other practical problems that make trial of a case easy, expeditious, and

inexpensive. *See Gulf Oil*, 330 U.S. at 508; *Pierre-Louis*, 584 F.3d at 1056 (quoting *Liquidation*

*Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356–57 (11th Cir. 2008)).

---

[6] This traditional *forum non conveniens* inquiry is undertaken in the federal courts, in the maritime realm, after the *Lauritzen/Rhoditis* analysis described above.

The public interest factors assessed include: (a) the administrative congestion resulting from cases being tried at a site other than their origin, (b) the forum's interest in the dispute, (c) the burden of jury duty on the community in which the court sits, and (d) difficulties associated with applying foreign law. *See Gulf Oil*, 330 U.S. at 508–09; *Pierre-Louis*, 584 F.3d at 1056 (quoting *Liquidation Comm'n of Banco Intercontinental*, 530 F.3d at 1356–57). In evaluating the private and public interests implicated by the venue of the litigation, "the district judge must consider the level of deference to accord the plaintiff's choice of forum." CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3828 (3d ed. 2007).

### B. Preclusion

Before analyzing the merits of the Motion using the above-described framework, the Court sets the parameters of its inquiry. Because this is the second case filed on the same set of operative facts with the same parties under the same theories of relief, preclusion principles come into play (as does the *Rooker-Feldman* doctrine, which is discussed below).

> "*Res judicata* is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, then the judgment bars litigation not only of 'every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented.' . . . [W]e refer to this strand of former adjudication as 'claim preclusion.' . . . If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of 'those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first.' . . . We refer to this strand of former adjudication as 'issue preclusion.'"

*In re All Am. Semiconductor, Inc.*, 427 B.R. 559, 565 (Bankr. S.D. Fla. 2010) (alterations in original) (quoting *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990)).

1. Collateral Estoppel

"Collateral estoppel, or 'issue preclusion' applies when a judgment '[forecloses] relitigation of a matter that has been litigated and decided.'"  *Callasso*, 324 F. Supp. 2d at 1324 (alteration in original) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).  "'Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue . . . .'"  *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  It does not matter whether the issue was previously litigated in state or federal court; both determinations are entitled to the same preclusive effect in federal court.  *See id.* (citing *Migra*, 465 U.S. at 83).

To properly invoke collateral estoppel, a party must meet four factors:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Chazen v. Deloitte & Touche, LLP*, No. 02-00352-CV-BE-S, 2003 WL 24892029, at *1–2 (11th Cir. Dec. 12, 2003) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000)).[7]

In the present case, the issue at stake in the state court was not identical to the issue here. The issue here — Vasquez's suit's connections with the entire United States — was not actually litigated in the Florida court.  As mentioned, while the Florida *forum non conveniens* inquiry considers connections between the suit and the State of Florida, the federal inquiry addresses the connections between a plaintiff's suit and the entire United States.  *See Callasso*, 324 F. Supp. 2d

---

[7]  "The federal standard for applying collateral estoppel principles is identical to the legal standard under Florida law."  *Callasso*, 324 F. Supp. 2d at 1325 (citing *Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1107 (11th Cir. 1992)).

at 1325.    Moreover,  the  Florida  court  here  considered  and  declined  to  apply  the *Lauritzen/Rhoditis* choice-of-law analysis.[8]   (*See* Fla. Order).  This does not, however, mean that the Florida Order lacks any preclusive effect.

In granting dismissal on *forum non conveniens* grounds, the Florida court determined Vasquez's suit lacked sufficient connections with Florida to retain jurisdiction.  (*See* Fla Order). As a result, the

> Plaintiff is barred from claiming that this case has connections to Florida.  The Florida state court has already determined that there is an insufficient connection between the state of Florida and the Plaintiff's suit for the state court to retain jurisdiction.  Therefore, it logically follows that for this Court to exercise jurisdiction, it would  have  to  find  that  there  is  a  connection  between  the Plaintiff's action and the United States, not including Florida.

*Callasso*, 324 F. Supp. 2d at 1326 n.5; *see also id.* at 1332 (finding that although the case had two Florida defendants, because the state court had previously determined "this fact [did] not sufficiently connect the Plaintiff's claim to Florida for the state court to hear this case[, the] Court cannot conclude there is a sufficient connection between the United States . . . as there is no evidence of a connection beyond these two defendants.").  In sum, although Plaintiff is not estopped by the Florida court's conclusion that the case should be dismissed on *forum non conveniens* grounds, the Court is "bound by the legal and factual conclusions of the Florida state court which were essential to its decision to grant a motion for *forum non conveniens* . . . ." *Aldana*, 2007 WL 3054986, at *3.

With regard to the question of whether or not Defendant has any contact with Florida, "Defendant[] [is] entitled to rely on the earlier judgment[] by courts of competent jurisdiction,

---

[8]  Vasquez raised *Lauritzen/Rhoditis* in his state suit.  *See* Brief for Appellant, *Vasquez v. YII Shipping Co.*, 46 So. 3d 1235 (Fla. 4th DCA 2010) (No. 4D09-3220), 2009 WL 5068575 at *7–14; Reply Brief for Appellant, *Vasquez v. YII Shipping Co.*, 46 So. 3d 1235 (Fla. 4th DCA 2010) (No. 4D09-3220), 2010 WL 2006282 at *3–11.  Because Vasquez raised the *Lauritzen/Rhoditis* choice-of-law test, in dismissing Vasquez's case the court implicitly rejected Vasquez's contentions.

and should not be forced to submit to a retelling of the same claims under a technically different guise." *Brennan v. Lyon*, 915 F. Supp. 324, 329 (M.D. Fla. 1996).  Like in *Callasso*, if Plaintiff is to defeat Defendant's Motion by showing there are sufficient connections between his lawsuit and the United States, he must do it by showing connections to the United States *other than* Florida.

Next, when considering whether the determinations of the discrete issues in the prior litigation were critical and necessary parts of the Florida judgment, the Court notes the Florida court considered the same four *forum non conveniens* factors which this Circuit applies. *See Callasso*, 324 F. Supp. 2d at 1326; (Fla. Order 6 (citing *Kinney Sys.*, 674 So. 2d at 86)). *Compare Aldana*, 578 F.3d at 1289–90 *with* (Fla. Order 6).  Thus, there were certain legal and factual issues considered by the Florida court that are identical to those the Court considers now. The Court is bound by those determinations, and "Plaintiff is barred by the doctrine of collateral estoppel from challenging the legal and factual findings contained in the [Florida Order]." *Callasso*, 324 F. Supp. 2d at 1326.

Finally, as the Court will explain, Plaintiff had a full and fair opportunity to litigate the issues in his state-court suit.

### 2. *Res Judicata*

"*Res judicata*, or claim preclusion, bars a subsequent claim when a court of competent jurisdiction entered a final judgment on the merits of the same cause of action in a prior lawsuit between the same parties."  *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998) (citing *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)). When giving *res judicata* effect to a state-court decision, a federal court "'must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'"

*Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1307 (11th Cir. 2006) (quoting *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985)).  The Florida Supreme Court has described Florida's version of *res judicata* as barring both matters actually considered, as well as matters that could have been litigated and determined in the earlier action:

> A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

*Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) (emphasis omitted) (quoting *Kimbrell v. Paige*, 448 So. 2d 1009, 1012 (Fla. 1984)); *see also Ebeh v. St. Paul Travelers*, No. 8:09-cv-2628-T-27TBM, 2010 WL 5553687, at *4 n.5 (M.D. Fla. Oct. 6, 2010) (quoting *Juliano*, 801 So. 2d at 105).  In order for a judgment to have *res judicata* effect, four conditions must be satisfied: "'(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality in the person for or against whom the complaint is made.'" *Brennan*, 915 F. Supp. at 328 (quoting *Adams v. Sewell*, 946 F.2d 757, 762 (11th Cir. 1991)).

In addition to barring the same parties from litigating the same claims, *res judicata* bars the parties from litigating matters that, while not actually raised in the first action, could have been raised.  *See Juliano*, 801 So. 2d at 105 (quoting *Kimbrell*, 448 So. 2d at 1012); *see also In re Barrett*, 410 B.R. 113, 119 (Bankr. S.D. Fla. 2009) (quoting *Juliano*, 801 So. 2d at 105).  This is because the purpose of *res judicata* "is that a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated." *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1259 (Fla. 2006); *Albrecht v. Florida*, 444 So. 2d 8, 11–12 (Fla. 1984) ("[A] final judgment by a court of competent jurisdiction is absolute and puts to rest every justiciable, as well as every actually

litigated, issue."), *superseded by statute on other grounds as stated in* 448 So. 2d 566 (Fla. 2d DCA 1984).  A party is only barred from litigating matters in the second action that could have been litigated in the first action if the cause of action is the same in both cases.  *See Albrecht*, 444 So. 2d at 12.

In addition to asserting his suit should remain here based on YII Shipping's direct contacts with the United States, Plaintiff now seeks to pierce YII Shipping's corporate veil in order to demonstrate that YII Agency is YII Shipping's Florida base of operations.  Plaintiff contends he will be able to demonstrate that YII Shipping has sufficient contacts with the United States, through Florida, to establish that YII Shipping has a substantial base of operations in the United States, in Florida, to justify application of the Jones Act, thereby preventing dismissal on *forum non conveniens* grounds.  It is clear that what Vasquez is attempting to do is again trying to establish YII Shipping's contacts with Florida, as YII Agency is located in Ft. Lauderdale, Florida.  If Vasquez successfully pierces YII Shipping's corporate veil, the Court will once again be asked to examine YII Shipping's contacts with Florida.

Vasquez, however, has already tried, and failed, to demonstrate that his suit against YII Shipping has sufficient contacts with Florida.  In his effort to do so before the Florida courts, Vasquez did not explicitly seek to pierce YII Shipping's veil.[9]  But the question for *res judicata* purposes is whether he could have raised that matter in state court so that *res judicata* bars Vasquez's attempt to pierce the veil here.  Before reaching that question, the Court must determine *res judicata*'s applicability, if any.  To make that determination, the Court considers the four above-described factors.  *See Brennan*, 915 F. Supp. at 328.

---

[9]  While not specifically seeking to pierce YII Shipping's corporate veil in his state suit, Vasquez attempted to tie YII Shipping to Florida through YII Agency.  *See, e.g.*, Reply Brief for Appellant, *Vasquez v. YII Shipping Co.*, 46 So. 3d 1235 (Fla. 4th DCA 2010) (No. 4D09-3220), 2010 WL 2006282 at *10; (Supplemental Reply Ex. 1, at 9–15).

*a.  Identity of the Thing Sued For*

As to the first factor, there is an identity of the thing sued for.  In both cases, Vasquez seeks damages for personal injuries sustained on Defendant's ship, asserting the same four claims.  (*See* Supplemental Reply 4, Supplemental Reply Ex. 1, at 1–7, Compl.).

*b.  Identity of the Cause of Action*

Turning to the second factor, the causes of action are identical for *res judicata* purposes.  "[T]he fact that a party brings two separate actions, both of which are based on the same transactions, occurrences and facts, but seeks remedies which are distinct in the two actions does not preclude the application of *res judicata*." *Benline v. City of Deland*, 731 F. Supp. 464, 467 (M.D. Fla. 1989) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982); and *Thermofin, Inc. v. Woodruff*, 491 So. 2d 344, 345 (Fla. 4th DCA 1986)).  When determining whether the causes of action in the later suit are identical to the ones raised in the earlier suit, the "principal test" considers "'whether the primary right and duty are the same in each case.  In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form.'" *Brennan*, 915 F. Supp. at 328 (quoting *I.A. Durbin,* 793 F.2d at 1549).  "The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." *Albrecht*, 444 So. 2d at 12.  In other words, "'if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of [claim preclusion].'" *Brennan*, 915 F. Supp. at 328 (alterations in original) (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)).

Here, not only does Vasquez assert the same four claims, the facts and evidence

underlying the claims stated in state court and the claims pleaded here are identical.  After all, this is simply the state case re-filed in federal court after dismissal by the Florida state court.[10] This case is based on the same factual predicate as the earlier state suit.  Finally, the same facts and evidence necessary to maintain the state suit are necessary for this suit.  For *res judicata* purposes, the Florida state-court action and this case are identical.

### c.  Identity of the Parties

The parties are identical in both the state action and this case.

### d.  Identity of the Quality in the Person For or Against Whom the Complaint is Made

As to the final factor, the parties in the state suit clearly had the same "incentive" to vigorously litigate Vasquez's claims as they do here.  *Benline*, 731 F. Supp. at 468.  Plaintiff had a full and fair opportunity to litigate in the state-court action.  The parties, attorneys, and issues are all the same as those appearing in the state suit.  In the state suit, the parties zealously litigated this case, taking extensive discovery on the identical claims asserted here.  (*See* Supplemental Reply Ex. 1, at 8).  Following discovery, a fully and "extensively" briefed motion was filed, and the Florida trial court heard oral argument, made a determination on the merits, and considered Plaintiff's motion for rehearing. (Fla. Order 1).  After reconsidering, the court amended its order dismissing the case, but nonetheless ordered dismissal.  (*See id.*).  Plaintiff unsuccessfully appealed the Florida trial court's decision to the Florida Fourth District Court of Appeal.  *See Vasquez*, 46 So. 3d at 1235.  There was undoubtedly a full and fair opportunity to litigate, and the parties adequately litigated this case.

---

[10]  Even if Vasquez were seeking relief under different statutes and relief theories, this would not bar *res judicata*.  *See Kremer*, 456 U.S. at 481 n.22.  The Florida judgment itself (the Florida court's conclusion that dismissal was warranted) is not binding on the Court.  Rather, the discrete factual and legal determinations made in arriving at that judgment bind the Court.  One of those essential determinations was that YII Shipping lacks sufficient contacts with Florida.  *See Callasso*, 324 F. Supp. 2d at 1324.

Nevertheless, Vasquez contends he did not have a full and fair opportunity to litigate his federal claims in the state suit.  (*See* Supplemental Opp'n 1–4 [ECF No. 68]).  This argument is unavailing.

First, Vasquez advocated for the *Lauretzin/Rhoditis* test in the state suit.  (*See* Fla. Order 4; Supplemental Reply Ex. 1, at 7–16); Brief for Appellant, *Vasquez v. YII Shipping Co.*, 46 So. 3d 1235 (Fla. 4th DCA 2010) (No. 4D09-3220), 2009 WL 5068575 at *4, 23; Reply Brief for Appellant, *id.*, 2010 WL 2006282 at *9–11.  Although the Florida court may not have specifically used the eight *Lauretzin/Rhoditis* factors, the court did determine that YII Shipping, with its Bahamian base of operations, lacks sufficient contacts with Florida.

Second, in substance the Florida court did consider whether or not YII Shipping has a Florida base of operations.  According to the authorities cited by Vasquez, a U.S. base of operations exists where there is a sufficient amount of control and operational contacts within the United States.  *See Fantome*, 2003 WL 23009844, at *3–4; *Williams v. Cruise Ships Catering*, 299 F. Supp. 2d 1273, 1279–81 (S.D. Fla. 2003); *Mattes v. Nat'l Hellenic Am. Line, S.A.*, 427 F. Supp. 619, 623–28 (S.D.N.Y. 1977).  When the Court peels back the "base of operations factor" title and looks at the individual contacts involved in such an inquiry, it is apparent that Vasquez had a full and fair opportunity to litigate this question in his state suit, identifying YII Shipping's contacts with Florida.  (*See generally* Fla. Order (finding YII Shipping's contacts with Florida insufficient to support a Florida venue)).  After considering Vasquez's arguments addressing the *Lauretzin/Rhoditis* test, the Florida court determined YII Shipping has a Bahamian base of operations.  (*See* Fla. Order 2; Supplemental Reply Ex. 1 [ECF No. 71-1]).  The Florida court determined YII Shipping's contacts with Florida were insufficient to support the suit remaining in a Florida court.  Considering the substance, rather than the form, of the state-court

proceedings, the Court finds Vasquez had more than a reasonable opportunity to raise his claims.[11]  As a result, *res judicata* may apply.

The Court next considers whether it should bar Plaintiff's attempt to pierce YII Shipping's veil.  There are no indications in the state-court order that Vasquez sought to pierce YII Shipping's veil when trying to show sufficient connections to Florida through YII Agency.[12]  Because *res judicata* bars both the relitigation of matters actually litigated, as well as "every other matter which might with propriety have been litigated and determined in that action," *Juliano*, 801 So. 2d at 105, the operative question is whether piercing the veil is a matter that could have been litigated and determined in the state action.[13]

It is well established that Florida law allows parties to pierce the corporate veil.  *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120–21 (Fla. 1984); *see also Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011); *Cabalceta v. Std. Fruit Co.*, 883 F.2d 1553, 1561 & n.2 (11th Cir. 1989); *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1486 (11th Cir. 1987); *Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09-20372-CIV, 2010 WL 2652496, at *6 (S.D. Fla. Feb. 26, 2010);

---

[11]  Vasquez's contention to the contrary rings hollow upon review of his opposition to YII Shipping's motion to dismiss the state court case.  The arguments raised there are identical to those asserted here.  (*Compare* Supplemental Reply Ex. 1, *with* Mot. Opp'n).  Plaintiff thoroughly briefed YII Shipping's Florida contacts, urging the court to find that YII Shipping had a Florida base of operations.  (*See* Supplemental Reply Ex. 1, at 9–15).

[12]  Vasquez implicitly attempted to do so, asserting in his state suit that YII Agency was YII Shipping's Florida office.  (*See, e.g.*, Supplemental Reply Ex. 1, at 10–11).

[13]  Even if Plaintiff pierces the veil, establishing that YII Agency is YII Shipping's alter ego, all that Plaintiff will "prove" is that YII Shipping has additional contacts with Florida.  And yet, a factual finding necessary to the Florida state-court judgment, a finding that binds this Court, is that YII Shipping does *not* have sufficient contacts with Florida.  So even if Plaintiff is "successful" and pierces the corporate veil, he is left trying to establish a position he is barred from asserting.  It would appear Plaintiff should have explicitly sought to pierce the veil in state court.  This is not counsel's first attempt to pierce the veil in a maritime context to avoid dismissal for *forum non conveniens*.  *See Popescu v. CMA CGM*, No. 09-20860-CIV, 2009 WL 5606131, at *1 (S.D. Fla. Nov. 5, 2009) (Altonaga, J.), *aff'd*, 384 F. App'x 902 (11th Cir. 2010).

*Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV, 2007 WL 7143959, at *6–11 (S.D. Fla. Aug. 30, 2007). "[T]o pierce the corporate veil, a plaintiff is required to prove both that the corporation is a mere instrumentality or alter ego of the defendant and that the defendant engaged in 'improper conduct.'" *Mason v. E. Speer & Assocs., Inc.*, 846 So. 2d 529, 533–34 (Fla. 4th DCA 2003) (citing *Dania Jai-Alai Palace*, 450 So. 2d at 1120–21).

Because Vasquez could have sought to pierce YII Shipping's veil, he cannot attempt to do so here.  It is a matter that could have been raised in the first action. This matter — piercing the corporate veil — is therefore barred by *res judicata*.

Plaintiff made a tactical decision that has severely handicapped him in his quest to have his federal case proceed.  Admittedly, while the Florida *forum non conveniens* analysis considers contacts with Florida and the federal analysis addresses contacts with the entire United States, 99-percent of Defendant's alleged contacts with the United States are through Florida.  The federal and Florida questions overlap and merge.  Had Plaintiff been employed by a company operating out of many states, a *forum non conveniens* dismissal of his Florida case might not prove to be a barrier to his federal case.  But Plaintiff can point to almost no contacts with the United States outside Florida, and, consequently, outside the *res judicata* bar.

Finally, the policy reasons advanced by *res judicata* clearly favor Defendant.  "[I]f a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in *any* court (except, of course, for appeals by right)."  *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004) (emphasis in original) (citing *Denson v. State*, 775 So. 2d 288, 290 n.3 (Fla. 2000)).  *Res judicata* recognizes that "'in the interest of the State[,] every justiciable controversy should be settled in

one action in order that the courts and the parties will not be pothered[14] for the same cause by interminable litigation.'" *Evans v. Evans*, 595 So. 2d 988, 993 (Fla. 1st DCA 1992) (Ervin, J., concurring and dissenting) (quoting *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952)).  YII Shipping has already litigated the issue of its contacts with Florida.  Because YII Shipping's only alleged contacts with the United States are in Florida, this case is really about Vasquez wanting a second bite at the apple.  The question of YII Shipping's contacts with Florida has been settled, and YII Shipping should not be pothered for the same cause here.

### C.  The *Rooker/Feldman* Doctrine

In addition to preclusion, Plaintiff's attempt to have the Court find that YII Shipping has sufficient contacts with the United States, through Florida, is barred by the *Rooker-Feldman* doctrine.  Under 28 U.S.C. § 1257(a),[15] federal review of state-court judgments[16] may only occur

---

[14]  Pother: "confused or fidgety flurry of activity: commotion."  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/pother (last visited Oct. 20, 2011).

[15]  Section 1257(a) reads:

> (a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

28 U.S.C. § 1257.

[16]  Plaintiff asserts that because the Florida courts considered a procedural matter — *forum non conveniens* — *Rooker-Feldman* may not apply.  (*See* Supplemental Opp'n 4).  In support, he cites *David Vincent, Inc. v. Broward County, Fla.*, 200 F.3d 1325, 1331–32 (11th Cir. 2000).  (*See* Supplemental Opp'n 4).  In *David Vincent*, the court was considering the effects, if any, of a preliminary injunction proceeding.  *See David Vincent*, 200 F.3d at 1331–32.  There, after the state court declined to issue an injunction, the plaintiffs voluntarily dismissed their state case and filed their federal lawsuit.  *See id.* at 1328–29.  Defendants thus sought to apply *Rooker-Feldman* to an interlocutory order of a voluntarily dismissed case.  Plaintiffs there did not seek to nullify a final judgment.

in the United States Supreme Court.  Thus, district courts lack jurisdiction to review final state-court judgments.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  "The *Rooker-Feldman* doctrine 'makes clear that federal district courts cannot review state-court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.'" *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1315–16 (S.D. Fla. 2011) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).  The doctrine applies both to claims that were actually raised in the state court and those "inextricably intertwined" with that state judgment. *Casale*, 558 F.3d at 1260.  Where a party did not have a "reasonable opportunity to raise his [or her] federal claim in state proceedings[,]" however, the doctrine does not apply.[17]  *Id.*  (quoting

---

Here, in contrast, it is a state-court final judgment that the Court is considering with regard to *Rooker-Feldman*.  Such would fit within the Supreme Court's recent "confinement" of *Rooker-Feldman* to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Vasquez is a state-court loser complaining of injuries caused by a state-court judgment and inviting the Court to reject that judgment by finding, contrary to the state court, that YII Shipping has sufficient contacts with Florida to be sued in the United States.

Moreover, *David Vincent* was decided in 2000, pre-*Exxon Mobil* and *Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009).  Prior to *Exxon Mobil,* courts in the Eleventh Circuit used the *Amos* test when determining whether the *Rooker–Feldman* doctrine applied.  *See Nicholson*, 558 F.3d at 1272.  That four-part test considered whether:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

*Id.* (quoting *Amos v. Glynn Cnty. Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003) (internal citations omitted)).  In *Nicholson* the Eleventh Circuit eschewed that test in favor of the strict language of *Exxon Mobil.  See Nicholson*, 558 F.3d at 1274 (citing *Exxon Mobil*, 544 U.S. at 284); *see also Figueroa*, 766 F. Supp. 2d at 1321 n.22.  The Eleventh Circuit has thus abrogated the requirement that the prior state-court ruling be a final judgment on the merits.

[17] For full faith and credit purposes, a doctrine similar to *Rooker-Feldman* in many ways, the Supreme

*Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)).  In that situation, the federal claim is not considered to be inextricably intertwined with the state-court judgment.  *See Powell*, 80 F.3d at 467 (citing *Wood v. Orange Cnty.*, 715 F.2d 1543, 1547 (11th Cir. 1983)).

In 2005, the Supreme Court revisited the *Rooker-Feldman* doctrine in *Exxon Mobil*, 544 U.S. 280.  Reeling in lower courts which had extended the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases," the Court "confined" the doctrine to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.  The Court went on to explain that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."  *Id.*

As stated, while the Eleventh Circuit has retired the *Amos* four-part test, it continues to acknowledge that "*Rooker-Feldman*'s reach extends to federal claims raised by the state-court loser that are deemed to be 'inextricably intertwined' with the state court judgment."  *Springer v. Perryman*, 401 F. App'x 457, 458 (11th Cir. 2010) (citing *Casale*, 558 F.3d at 1260).  In fact, the Eleventh Circuit has stated post-*Exxon Mobil* and *Nicholson*: "[W]e must determine whether a plaintiff is a state-court loser who is complaining of injuries caused by state-court judgments.  In doing so, our circuit has continued to apply the fourth factor of the *Amos* test, evaluating whether the plaintiff's claims are 'inextricably intertwined' with the state court judgment."  *Cormier v. Horkan*, No. 10-11089, 2010 WL 3705973, at *2 (11th Cir. Sept. 23, 2010) (per curiam) (internal citations omitted).

---

Court has held that a party has had a full and fair opportunity to litigate where the prior proceedings "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982).

Case No.  11-60248-CIV-ALTONAGA/Simonton

Procedurally, *Rooker-Feldman* may apply here because this federal case was not filed until after the state-court proceedings concluded.  The Florida judgment was entered on June 8, 2009 and was affirmed on November 17, 2010.  *See Vasquez*, 46 So. 3d at 1235.  A review of the Florida Supreme Court's docket reveals that Vasquez did not appeal to that court.  Consequently, his state-court case became final with the appellate court's decision.[18]  Vasquez did not file his federal case until February 3, 2011, almost three months later.  The state-court proceedings were therefore concluded at the time this case was filed.  (*See also* Supplemental Opp'n 6 (conceding state-court proceedings concluded prior to filing federal action)).

Here, Vasquez is desperately trying to show YII Shipping has sufficient contacts with the United States because of its contacts with Florida.  The Florida court has already determined that YII Shipping does not have sufficient contacts, let alone a base of operations here.  Therefore, in order to find that YII Shipping has sufficient contacts with the United States (through Florida), the Court would essentially have to nullify the state-court judgment.

Because the Florida state court found YII Shipping had insufficient contacts with Florida for the case to proceed, the Court cannot find there are sufficient contacts with the United States through Florida without nullifying the Florida judgment.  *See Figueroa*, 766 F. Supp. 2d at 1316 ("[A] federal claim is inextricably intertwined with a state-court judgment: '(1) where the success of the federal claim would "effectively nullify" the state-court judgment; and (2) where the federal claim 'succeeds only to the extent that the state wrongly decided the issues.'") (quoting *Springer*, 401 F. App'x at 458).  To do what Plaintiff asks — finding sufficient contacts with the United States because of Defendant's contacts with Florida — the Court would have to either find the Florida court was wrong, or make a determination that would effectively abrogate

---

[18]  If a state appeal is pending, state proceedings have not ended for *Rooker-Feldman* purposes.  *See Nicholson*, 558 F.3d at 1276.

the Florida judgment.  If Vasquez disagreed with the Florida court's findings, his recourse was an appeal to the Florida Supreme Court and, if unsuccessful, a petition for writ of certiorari to the United States Supreme Court.  *See Figueroa*, 766 F. Supp. 2d at 1315–16 (quoting *Casale*, 558 F.3d at 1260).  He may not challenge the Florida judgment here.[19]

Plaintiff had a full and fair opportunity to litigate in state court.  The Florida action was filed in a court of general jurisdiction.  *See* FLA. CONST. art. V, § 5; FLA. STAT. § 26.012. Plaintiff took extensive discovery, argued a *forum non conveniens* motion, and had the trial court reconsider its initial order.  Vasquez then took an appeal, where he reasserted his arguments. Vasquez's opportunity to litigate went well beyond the minimum required under the Fourteenth Amendment.  *See Kremer*, 456 U.S. at 482.

### D.  The Seven *Lauritzen* Factors Do Not Weigh in Favor of the United States as a Forum.

With the necessary background afforded by the preclusion and *Rooker-Feldman* issues discussed, the Court now turns to the choice-of-law question.  The first seven *Lauritzen* factors merit little discussion.[20]  First, the place of the wrongful act is the "[p]lace where the acts giving rise to the liability occurred, the *lex loci delicti commissi*."  *Lauritzen*, 345 U.S. at 583.  Here, the acetylene tank exploded and injured Vasquez in The Bahamas.  (*See* Compl. ¶ 19; Fla. Order 2). Second, the law of the ship's flag is Honduras.  (*See* Fla. Order 2; Compl. ¶ 6).  Third, Plaintiff is domiciled in the Dominican Republic.  (*See* Compl. ¶ 2).  Skipping the fourth factor for the

---

[19]  A review of Vasquez's state-court arguments and those asserted here confirms that the issues are inextricably intertwined, and Vasquez is seeking review and rejection of the state judgment.  (*Compare* Supplemental Reply Ex. 1, *with* Mot. Opp'n).  Vasquez has asserted the same facts and legal arguments there as here: that the Jones Act should apply; that YII Shipping has a permanent base of operations in Ft. Lauderdale, Florida; that YII Agency is YII Shipping's Florida office; that YII Shipping ships from Florida; and that *forum non conveniens* mandates U.S. jurisdiction.  (*Compare* Supplemental Reply Ex. 1, *with* Mot. Opp'n).

[20]  Vasquez does not address the first seven factors, focusing exclusively on the base of operations, the eighth factor.  (*See generally* Mot. Opp'n).

moment, as to the fifth factor, Vasquez signed the shipping articles in The Bahamas. (*See* V. Higgs Dep. Vol. II 161:4–7; Vasquez Dep. 87:15–23).  Sixth, as discussed below, The Bahamas is an accessible forum.  (*See* Fla. Order 6–7).  Furthermore, YII Shipping concedes that Vasquez may bring his claims in The Bahamas under Bahamian law.  (*See* Mot. 7–8).  The seventh *Lauritzen* factor, the law of the forum, also weighs against Plaintiff.  "Because a law of the forum is applied to plaintiffs who voluntarily submit themselves to it[, it] is no argument for imposing the law of the forum upon those who do not."  *Lauritzen*, 345 U.S. at 591–92. Defendant has not submitted itself to this forum; it has resisted defending Vasquez's suit in the United States in both the state court and here.

The fourth factor, the allegiance of the shipowner, merits greater discussion.  The Court finds this is The Bahamas.  Plaintiff acknowledges that YII Shipping is a foreign corporation. (*See* Compl. ¶ 3).  The Florida court held that YII Shipping is "a duly registered Bahamian corporation, which maintains its principal place of business and base of operations in Nassau." (Fla. Order 2).  Vaughn Higgs, an owner and director of YII Shipping, stated under oath that "At all times material hereto, YII SHIPPING COMPANY LIMITED has maintained all of its operations, buildings, employees and vessels in The Bahamas.  At no time material hereto did YII SHIPPING COMPANY LIMITED maintain any employees, offices, bank accounts or property in Florida."  (V. Higgs Aff. ¶ 3).  Finally, a search of the Florida Department of State, Division of Corporations through Sunbiz.org[21] discloses no record of YII Shipping in Florida. Conversely, YII Agency is listed as a Florida profit corporation with its agent, officer, and director listed as Lisbon Higgs.  A search of "Lisbon Higgs" discloses a record of YII Agency, and a record of "Bahamas Freight Company Ltd." (inactive since 2002).  A search of Vaughn

---

[21]  Plaintiff submitted the Sunbiz.org record as well as the official records for YII Agency as Exhibit 3. (*See* Mot. Opp'n Ex. 3 [ECF No. 61-4]).

Higgs only discloses a record of "Trinity Aviation Ltd., Inc." (inactive).

The first seven factors weigh heavily against applying the maritime law of the United States, including the Jones Act.  The Court next addresses YII Shipping's base of operations.

### E.  YII Shipping Does Not Have a "Base of Operations" in the United States.

Despite the Florida court explicitly determining YII Shipping's base of operations is in Nassau, The Bahamas (*see* Fla. Order 2), Plaintiff maintains YII Shipping's base of operations is in Florida (*see* Mot. Opp'n 7–8).  In fact, except for an Ohio[22] insurance contract[23] and the retired Lisbon Higgs, the only connections Plaintiff asserts YII Shipping has with the United States are through Florida.  (*See generally* Compl.; Mot. Opp'n).  The Florida court has already determined YII Shipping is a "duly registered Bahamian corporation, which maintains its principal place of business and base of operations in Nassau," and lacks sufficient connections to Florida.  (Fla. Order 2).  Indeed, for the two years before Vasquez's accident, the M/V Yeocomico sailed exclusively in Bahamian waters.  (*See id.*).

As a result of the Florida court's determinations, Plaintiff is estopped from maintaining that YII Shipping has sufficient contacts with Florida or that it has its base of operations here.  *See Callasso*, 324 F. Supp. 2d at 1326 n.5.  In addition, after a review of the evidence submitted by the parties, the Court determines that YII Shipping does not have a "base of operations" anywhere in the United States outside Florida.

To effectuate the liberal purposes of the Jones Act, a court must consider the "real nature

---

[22]  Vasquez does not argue that YII Shipping has sufficient contacts with Ohio to establish a base of operations in the United States.  (*See* Mot. Opp'n 23).  He simply mentions that YII Shipping's insurance policy, which only covers Florida and Florida's territorial waters (as well as shipping to foreign countries), is with an Ohio-based company.  (*See id.*).

[23]  The M/V Yeocomico was insured by a Bahamian insurance company.  (*See* V. Higgs Dep. Vol. I 101:6–18).

of the operation" and take a "cold objective look at the actual operational contacts that [the] ship and [the] owner have with the United States." *Rhoditis*, 398 U.S. at 310.  Although *Rhoditis* does not dictate that a shipowner's base of operations is the decisive factor in a choice of law analysis, a substantial base of operations in the United States may alone justify the application of U.S. law.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1176 (11th Cir. 2009) (citations omitted).  "In deciding whether a party has a base of operations in the U.S., 'the important question is whether the contacts, irrespective of [the party's] contacts in other countries, amount to a *substantial* relation to the United States.'"  *Id.* (emphasis and alteration in original) (quoting *Williams v. Cruise Ships Catering*, 299 F. Supp. 2d 1273, 1283 (S.D. Fla. 2003)).  For example, in *Rhoditis* the shipowner had a base of operations in the United States because a U.S. domiciliary principally owned the corporate shipowner, which he managed from the United States; the shipowner's principal place of business was in the United States; the ship regularly engaged in scheduled runs between U.S. and Middle Eastern ports; and the ship derived its entire income from cargo either originating or terminating in U.S. ports.  *See Cooper*, 575 F.3d at 1178 (discussing *Rhoditis*, 398 U.S. at 307–08).  Similarly, in *Szumlicz* the court found the defendant had a substantial base of U.S. operations because the defendant maintained offices, agents, and a crew doctor in the United States; its vessels operated on a regular basis out of U.S. ports; and it advertised and operated cruises based out of Ft. Lauderdale.  *See* 698 F.2d at 1194–96; *see also Fantome*, 2003 WL 23009844, at *4 (finding a U.S. base of operations, even though the vessel had never called here, because the defendant-shipowner based its corporate operations for its entire fleet in Miami Beach, including sales and advertising, vessel and crew management, and bank accounts).

In contrast, the court in *Sigalas* found that where the defendant-shipowner did not run its

day-to-day operations — such as managing vessel itineraries, personnel, maintenance, insurance, and provisions — from the United States, but merely owned vessels that called at American ports and earned 90% of its revenue from American sales, the shipowner did not have a base of operations in the United States.  *See Sigalas*, 776 F.2d at 1514, 1518.  Similarly, in *Cooper* the defendants had no U.S. base of operations, despite U.S. ownership and the domicile of the defendants' president, because there was no evidence the defendants made management decisions, conducted operations, or generated revenue in the United States.  *See Cooper*, 575 F.3d at 1178–79.

Here, all of Plaintiff's references to U.S. connections, sans one mention of Ohio and an unmade argument regarding Lisbon Higgs, concern Florida generally or specific cities in Florida. First, Vasquez points to Vaughn and Lisbon Higgs and tries to tie YII Shipping to the United States through the Higgses' contacts with Florida.  (*See* Mot. Opp'n 6).  Lisbon Higgs maintains U.S. and Bahamian citizenship.  (*See* V. Higgs Dep. 29:11–13, 186:2–11; Mot. Opp'n Ex. 4 [ECF No. 61-5]).  Lisbon owns property in Florida and is a Florida resident.  (*See* V. Higgs Dep. 29:11–13, 39:9–10, 186:2–11).  In addition, Lisbon owns two of five shares of YII Shipping, and is the owner and principal of YII Agency.  (*See* Mot. Opp'n 13; V. Higgs Dep. 22:20–23; Blanca Roca Dep. 15:16–21, Aug. 3, 2011 [ECF Nos. 62-2, 2-3]).  Lisbon, however, retired from YII Shipping in 2002 and plays no role in YII Shipping's operations.  (*See* V. Higgs Dep. 8:23–24, 20:1–2, 28:10–23; 168:9–15; Vasquez Dep. 91:15–17).  His son Vaughn now runs YII Shipping. (*See* V. Higgs Dep. 10:22–11:1, 23:7–23).  Similarly, Lisbon is retired from YII Agency.  (*See id.* 54:20–21).

Vaughn is a Bahamian citizen and lives in The Bahamas.  He maintains a phone number and mailing address in Florida for personal and not professional use because mail to The

Bahamas is slow and he does not want to miss paying his credit card.  (*See id.* 152:4–20; 184:14–18).  Except for Lisbon's U.S. citizenship, all of the Higgses' ties to the United States are through Florida, and thus have little effect on the Court's consideration of YII Shipping's contacts with the United States outside of Florida.

Vasquez also points to certain contacts dating from 1999 (eight years before the accident), asserting he was contacted by the then-active Lisbon Higgs from Florida about employment with YII Shipping.[24]  (*See* Mot. Opp'n 9; Vasquez Dep. 88:1–15).  He further asserts he was interviewed and hired in Port Dania, Florida.  (*See* Mot. Opp'n 9).  Finally, Vasquez first joined a YII Shipping vessel in Florida.  (*See id.*).  All of these U.S. contacts are with Florida.

Next, Vasquez highlights YII Shipping's services.  (*See id.* 7–10).  YII Shipping advertises that it ships from Florida, has a Florida warehouse, and ships goods for Florida- and Miami-based companies.  (*See id.*; Mot Opp'n Exs. 8, 14, 15, 18, 19 [ECF No. 61-8, 61-14,[25] 62-1–62-4, 62-8, 62-9]).  Again, these U.S. contacts are with Florida, and thus do not affect the Court's determination concerning YII Shipping's non-Florida contacts with the United States.

Vasquez tries to persuade the Court to pierce YII Shipping's corporate veil and allow consideration of YII Agency as YII Shipping's "Florida entity/office."  (Mot. Opp'n 10–21 & n.24).  From the start, this inquiry has focused on Florida.  YII Agency is described as YII Shipping's Florida office.  (*See id.* 10 n.24).  Again, the Court is bound by the Florida court's

---

[24]  For the years immediately preceding his accident, Vasquez signed his contract or ship's articles in Nassau, The Bahamas.  (*See* Vasquez Dep. 87:15–23).

[25]  Certain bills of lading indicate that the companies having their goods shipped are companies located outside Florida (for example, Enterprise Group of South Carolina, and Goody Products of Illinois).  All shipments, however, were loaded in Florida and discharged in The Bahamas.  (*See, e.g.*, Mot. Opp'n Ex. 14, at 10, 11).  Plaintiff does not argue these constitute YII-Shipping contacts with the United States other than Florida.

determination that YII Shipping has insufficient contacts with Florida, and Plaintiff is barred by *res judicata* from attempting to pierce YII Shipping's corporate veil.

In any event, Plaintiff's efforts in this proceeding fall short of piercing YII Shipping's veil or of showing non-Florida contacts.  In discovery here, Vasquez has collected a number of documents which he maintains show "YII Shipping has continuously maintained a permanent office and/or base of operations in Florida."  (*Id.* 21).  The first category of evidence is letterhead purportedly listing YII Shipping's "Florida Office" as YII Agency.[26]  (*Id.* 12; Mot. Opp'n Ex. 16 [ECF No. 62-5]).  The letterhead provides a Florida address for YII Agency as well as a Florida telephone number.  (*See id.*).  The next cited document is YII Shipping's declaration made to the U.S. Department of Homeland Security.  (*See* Mot. Opp'n 12 (citing Mot. Opp'n Ex. 17 [ECF No. 62-7])).  Plaintiff also submits advertisements showing YII Shipping as having a Florida office (at YII Agency's address).  (*See id.*; Mot. Opp'n Exs. 9, 10[27] [ECF Nos. 61-9, 61-10]).  The advertisement in Exhibit 9 was not generated by YII Shipping and incorrectly states YII Shipping *is* St. John's Shipping Company.  (*See* Mot. Opp'n Ex. 9; V. Higgs Dep. 114:23–117:6).  YII Shipping and St. John's shipping are separate companies; Plaintiff does not argue they are the same.  (*See* Mot. Opp'n 21–22 (asserting YII Shipping has done business with St.

---

[26]  The letterhead does not precisely support Plaintiff's argument.  The letterhead is for the M/V Yeocomico, not YII Shipping itself.  (*See* Mot. Opp'n Ex. 5).  The letterhead states the M/V Yeocomico has two offices — YII Shipping and YII Agency.  (*See id.*).  This is slightly different from YII Shipping stating *it* has an office in Florida.  The letterhead simply states that the M/V Yeocomico (at one point), shipped from Nassau to Ft. Lauderdale.  Finally, the letterhead is outdated because it is undisputed that the M/V Yeocomico no longer travels to Florida, but is solely engaged in inter-Bahamian shipping.  (*See* Fla. Order 2; Pl.'s Ex. 12 [ECF No. 61-12]).  Furthermore, it lists YII Agency's former address; YII Agency moved from the 1777 South Andrews Avenue address years ago.  (*See* Roca Dep. 45:8–24).

[27]  The advertisement in Exhibit 10, like the letterhead, is an ad for the M/V Yeocomico.  (*See* Mot. Opp'n Ex. 10).  The advertisement states that the vessel has an agent in Nassau and Ft. Lauderdale.  That the M/V Yeocomico has two agents does not mean those agents are agents of each other, or are in a principal-agent relationship.  Because of the *res judicata* issues, and the fact that the Court is not determining anew whether YII Shipping has substantial Florida contacts, the Court does not attempt to unravel the relationship between the M/V Yeocomico, YII Shipping, and YII Agency.

John's Shipping Company); Maldonado Dep. 15:18–23).

Vasquez also relies on the deposition of YII Agency's representative, Blanca Roca.  (*See* Mot. Opp'n 13–23).   Through Roca, Vasquez shows that YII Agency works solely for YII Shipping (*see id.* 13; Roca Dep. 101:21–102:9); Lisbon Higgs owns YII Agency (*see* Mot. Opp'n 14; Roca Dep. 15:16–21); Lisbon Higgs signs YII Agency's office leases[28] (*see* Mot. Opp'n 14; Roca Dep. 59:3–60:1; Mot. Opp'n Ex. 21 [ECF No. 62-11]); Vaughn Higgs deals with YII Agency's bank account (*see* Mot. Opp'n 14–17; Roca Dep. 30:22–38:18, 37:5–43-12; Mot. Opp'n Ex. A [ECF Nos. 58–58-4); and YII Shipping funds YII Agency[29] (*see* Mot. Opp'n 16–18; Roca Dep. 37:5–43-12).   Plaintiff asserts because YII Agency works only for YII Shipping, Roca's services are performed for YII Shipping (*see* Mot. Opp'n 16; Roca Dep. 20:22–22:19, 101:21–102:9); and Vaughn Higgs controls YII Agency (*see* Mot. Opp'n 17–18;

---

[28] Plaintiff calls attention to the lease between YII Agency and the landlord, which has a forum-selection clause designating Broward County, Florida, as the venue for any lease disputes.  (*See* Mot. Opp'n 14). Plaintiff invites the Court to find that because of that forum-selection clause, somehow YII Shipping (or even YII Agency for other disputes not involving the lease) should be forced to litigate in Broward County.  Vasquez does not maintain he is a party or intended third-party beneficiary to any of the lease contracts. The Court recently rejected the identical argument —  trying to impute a forum-selection clause to non-parties to the contracts — in another case.  *See Schuster v. Carnival Corp.*, No. 10-21879-civ-Altonaga, at 23–27 (S.D. Fla. Feb. 3, 2011); *Schuster v. Carnival Corp.*, No. 10-21879-CIV, 2011 WL 541580, at *6–7 (S.D. Fla. Feb. 8, 2011) (Altonaga, J.).

[29] The Court is unsure why Plaintiff highlights this fact, as it supports Defendant's version of events.  If YII Agency is performing services for YII Shipping, YII Shipping has to pay for those services.  If YII Shipping did not pay YII Agency for services performed that might support an alter-ego theory. It is therefore unsurprising that YII Agency is funded by YII Shipping — it is YII Agency's sole client.  This is confirmed by Roca, who invoices YII Shipping, which then pays the invoices.  (*See* Roca Dep.  38:6–18).  Taking Plaintiff's argument to the extreme, any entity that pays another entity for goods or services would be "funding" the second entity, potentially opening itself up to liability as an alter ego.  A person or company is allowed to incorporate a second, separate, entity for the purposes of limiting liability; that is the basis for the corporate form.  *See Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1102 (5th Cir. 1973) ("[L]imited liability is one of the principal purposes for which the law has created the corporation."); *After Dark, Inc. v. United States*, No. 67-272-Civ-T, 1969 WL 179, at *3 (M.D. Fla. Dec. 4, 1969) ("The incorporation of a business to insulate its assets, or stated another way, to limit liability, is, under the law, a legitimate business purpose.").  So long as the companies remain separate and observe corporate formalities, they are separate for legal purposes, even if the second company performs services solely for the first.

Roca Dep. 46:10–47:12, 94:6–97:16, 101:4–10, 103:14–104:2).   YII Shipping does not direct Roca's rate calculations (*see id.* 14:16–24), and Roca does not report to Lisbon Higgs (*see id.* 15:16–25).

The sum total of the evidence submitted by Vasquez in his attempt to pierce the veil is that YII Shipping possibly "maintained a permanent office and/or base of operations in Florida" (Mot. Opp'n 21), a proposition he is barred by *res judicata* from asserting.  None of the evidence supports any substantial connections with the United States *other than* connections to Florida.

Next, in support of Vasquez's argument that YII Shipping has a base of operations in the United States, he asserts that YII Shipping "has been doing [sic] engaged in ongoing business activities with Florida[-]based entities."  (*Id.*).  Vasquez contends that YII Shipping "has been doing business and deriving economic benefits in Florida with various Florida entities."  (*Id.*). Specifically, Vasquez points to Florida-based St. John's Shipping Company and Sunshine Shipping, Inc., both of which are located in Ft. Lauderdale.  (*See id.* 22–23).  Additionally, YII Shipping rents a warehouse from St. John's in Port Everglades, Florida.  (*See id.* 22).  This only shows connections with the United States through Florida.

Vasquez also shows YII Shipping's vessel pollution policy is with an Ohio-based insurance company.  (*See id.* 23).  The policy covers the "geographic area" from Jacksonville, Florida to the Dominican Republic.  (*Id.*; Mot. Opp'n Ex. 20 [ECF No. 62-10]).  There are no assertions that it covers any other state's territorial waters.

Finally, Vasquez insists YII Shipping "has sought the protections and benefits of U.S. courts."  (Mot. Opp'n 23).  He points to a decade-old case where YII Shipping and the M/V Yeocomico were sued.  (*See id.*); *Merrill Stevens Dry Dock Co. v. M/V Yeocomico II*, No. 98-cv-01276-Brown (S.D. Fla. filed June 5, 1998).  There, YII Shipping and the M/V Yeocomico were

defendants, they counterclaimed and appealed.  *See Merrill Stevens Dry Dock Co.*, No. 98-cv-01276-Brown, Docket.  YII Shipping and the M/V Yeocomico did not seek the protections and benefits of the U.S. courts; the plaintiff did.  The fact that YII Shipping and the M/V Yeocomico were sued in this District in 1998 has little substantive effect on whether YII Shipping has sufficient contacts with the United States outside Florida.

Distilling the summarized evidence to its essence, the only contacts Vasquez has shown YII Shipping has with the United States as a whole (outside Florida) are a policy with an Ohio-based insurance company, its having shipped goods for an Illinois company and a South Carolina company from Florida, its having been sued in federal court in Florida, and the retired U.S.-citizen and Florida resident Lisbon Higgs.  The business contacts themselves are insubstantial.  The discovery of Lisbon Higgs, a retired owner with less than a majority ownership in YII Shipping and who partakes in no management decisions is insufficient, in and of itself, to demonstrate YII Shipping has sufficient ties with the United States or to compel the conclusion that YII Shipping has a U.S. base of operations.  *See Cooper*, 575 F.3d at 1178–79.  Additionally, YII Shipping does not pay U.S. taxes.  (*See* V. Higgs Dep. 177:12–20).  Further, that YII Shipping occasionally ships goods for non-Florida companies from Florida does not demonstrate substantial contacts with the United States.  And finally, being sued in Florida 13 years ago does not provide sufficient contacts to justify application of the Jones Act.  In sum, the Court finds YII Shipping does not have a U.S. base of operations, and the *Lauritzen/Rhoditis* factors do not support applying the Jones Act.

**F.  The United States is not a "Convenient" Forum**.

Having determined the Jones Act is not applicable to the facts of this case, the Court turns to the factors addressed in the traditional *forum non conveniens* analysis, observing that as

a foreign plaintiff, Vasquez receives little deference in his choice of suing YII Shipping in the United States.  *See Piper Aircraft*, 454 U.S. at 256 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

### 1.  Alternative Forum

"The defendant has the initial burden of establishing that an adequate alternative forum exists with jurisdiction over the whole case."  *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1262 (S.D. Fla. 2001) (citation omitted).  "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred."  *Leon*, 251 F.3d at 1311 (citing *Piper Aircraft*, 454 U.S. at 254 n.22).  A remedy is inadequate when it is "no remedy at all."  *Piper Aircraft*, 454 U.S. at 254.

Defendant contends The Bahamas is an adequate and alternative forum for this litigation. "Availability and adequacy warrant separate consideration."  *Leon*, 251 F.3d at 1311.  An alternative forum is "'available' to the plaintiff . . . 'when the defendant is "amenable to process" in the other jurisdiction.'"  *Id*. (quoting *Piper Aircraft*, 454 U.S. at 254 n.22).  The alternative forum is adequate unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."  *Piper Aircraft*, 454 U.S. at 254.

The Florida state court found that The Bahamas is an adequate alternative forum.  (*See* Fla. Order 6).  Similarly, courts within the Eleventh Circuit have consistently found The Bahamas is an adequate alternative forum for litigation of this ilk.  *See Larsen v. Kerzner Int'l Hotels Ltd.*, No. 08-22031-CIV, 2009 WL 1759585, at *7 (S.D. Fla. June 19, 2009) ("The Bahamian legal system is patterned after the English system; allows access to evidence, witnesses, and relevant sites; permits actions based on negligence and damages in personal injury

cases; and supports enforcement of judgments."); *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at *7 (S.D. Fla. Sept. 5, 2008); *Morse v. Sun Int'l Hotels, Ltd.*, No. 98-7451-Civ, 2001 WL 34874967, at *2–3 (S.D. Fla. Feb. 26, 2001). Moreover, as a Bahamian corporation, it is "undisputed" Defendant is amenable to process there. (Mot. 16). Based on considerations of collateral estoppel and the Court's own analysis, The Bahamas is an adequate alternative forum.

### 2. Private Interests

Defendant contends private interests do not favor the United States as a forum. (*See* Mot. 15). He makes the argument even though he was injured on a foreign-flagged vessel while sailing in foreign waters, the vessel was not required to meet U.S. safety codes or laws, and witnesses to the accident are neither Florida nor U.S. residents but are mostly Bahamian residents. While Plaintiff complains of the adequacy of his supervision and training, Plaintiff's supervisor is a citizen and resident of The Bahamas. (*See* Vasquez Dep. 38:8–18; Fla. Order 9).

"Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) (considering "access to proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining witnesses"). Additionally, other private-interest factors include "availability of compulsory process for witnesses, cost of obtaining attendance of witnesses, ability to view the premises (if necessary), and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Miyoung Son*, 2008 WL 4186979, at *8 (quoting *Gulf Oil*, 330 U.S. at 508).

The Florida courts found the private interests "overwhelmingly" favor The Bahamas as the proper forum for this case. (Fla. Order 7). The M/V Yeocomico was in Bahamian territorial waters at the time of the accident, the only liability witnesses are Defendant's shoreside

employees located in Nassau and other crew members (none of whom are U.S. or Florida residents), and all medical witnesses are in The Bahamas or the Dominican Republic. (*See id.* 7–8). While Plaintiff visited two doctors in Miami, the court found these sorts of "litigation evaluations carry little, if any, weight in the *forum non conveniens* analysis." (*Id.* 8). Even considering these Miami doctors, the Florida court found their impact "clearly . . . outweighed by the overwhelming number of liability, damage and causation witnesses located outside of Florida." (*Id.*). It was "significant" that the M/V Yeocomico sailed solely in Bahamian waters and had not been in any U.S. port for over two years prior to Plaintiff's injury, and was thus not subject to U.S. laws or safety codes. (*Id.*). All training and supervision occurred in The Bahamas by Bahamians. (*See id.* 9).

Even if the Court were not bound by the Florida court's determinations, its own consideration of cited factors persuades it that the private-interest factors weigh heavily in favor of The Bahamas as the proper forum for this suit. While all factors weigh in favor of The Bahamas, the Court is most persuaded by the fact that all witnesses live outside the United States, with the vast majority in The Bahamas. (*See* Vasquez Dep. 16:3–18:12). To the extent certain witnesses reside in the Dominican Republic, it is equally as burdensome to fly to The Bahamas as it is to fly to Miami. Because a great majority of witnesses reside in The Bahamas, aboard a ship located in The Bahamas, or just simply abroad, to have the litigation here every single witness would have to travel to the United States. Conversely, if the litigation occurred in The Bahamas, a majority of witnesses already reside there.

Furthermore, it is not clear that many of the foreign witnesses would be subject to compulsory process in the United States. Certain crucial witnesses, including the Bahamian and Dominican doctors, as well as police or fire investigators, are not controlled by Defendant. The

inability to produce these witnesses for trial, even if they could be deposed, would be prejudicial. Personal jurisdiction, however, could be obtained over the Bahamian witnesses in The Bahamas. Moreover, even if the parties could compel the Bahamian witnesses to attend trial in the United States, the cost of doing so would greatly exceed the cost of holding trial in The Bahamas. Finally, the fact Mr. Vasquez was seen by two Florida doctors is insufficient to tip the balance in favor of a U.S. forum.

In addition to witnesses, the relative ease of access to other evidence weighs in favor of litigating the case in The Bahamas.  Accident investigative reports, evidence from the explosion, insurance policies, prior accident reports, safety violation reports, medical records, and any other tangible evidence would be located in The Bahamas and beyond the Court's reach.  Except for the Miami attorneys and local doctors' files, there is a minimum of evidence located in Florida or the United States, and this case has nearly zero connection with the United States or Florida. The private interests strongly favor trial in The Bahamas.

### 3. Public Interests

If the balance of the private interests are "in equipoise or near equipoise, [the Court] must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (emphasis in original) (internal quotation marks and quotation omitted).  But because the private interests weigh heavily in favor of dismissal and favor The Bahamas as the proper forum, the Court does not reach the public interests.  *Aldana*, 578 F.3d at 1298 ("It is only when the private interest factors are 'at or near equipoise' that a district court is obliged to consider the public interests at stake in a suit.").

4.  Reinstatement

"In conducting a *forum non conveniens* analysis, the district court must 'ensure[] that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.'" *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1272 (11th Cir. 2009) (quoting *Aldana*, 578 F.3d at 1290).  Defendant concedes that Plaintiff may reinstate his suit in The Bahamas without prejudice.  Defendant's stipulation removes any impediment to reinstatement. Finally, a condition of dismissal is that YII Shipping must submit to the jurisdiction of the Bahamian courts and waive any statute-of-limitations defenses.  *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009).

### III.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.      The Motion to Dismiss **[ECF No. 49]** is **GRANTED**.

2.      The Clerk shall **CLOSE** the case, and all pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of October, 2011.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record