UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60248-CIV-ALTONAGA/Simonton

**FRANKLIN VASQUEZ**,

     Plaintiff,
vs.

**YII SHIPPING COMPANY, LTD.**,

     Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon the Mandate from the Eleventh Circuit Court of Appeals dated October 5, 2012 ("Mandate") [ECF No. 80]. The Court has carefully considered the Mandate, the parties' submissions, and the applicable law.

## I. BACKGROUND[1]

This case concerns Plaintiff, Franklin Vasquez's ("Plaintiff['s]" or "Vasquez['s]") claims related to an injury suffered aboard a vessel while in foreign waters. The Court previously dismissed Plaintiff's action against the vessel's owner, YII Shipping Company, Ltd. ("Defendant" or "YII Shipping"), on *forum non conveniens* grounds. (*See* Order dated Oct. 28, 2011 [ECF No. 72]). Specifically, the Court concluded the Jones Act did not apply because the Court found that (1) YII Shipping does not have a "base of operations" in the United States — it has minimal non-Florida U.S. contacts, and its Florida contacts were previously held to be insufficient by a Florida court — and, (2) other factors did not support the application of United States law. The Court then proceeded with a traditional *forum non conveniens* analysis and dismissed the case upon concluding that the United States is not a "convenient" forum.

---

[1] Most of the relevant facts are addressed in the Analysis rather than in the Background section.

Plaintiff appealed the decision. The Eleventh Circuit held the Court was not bound by the Florida court's determination regarding Defendant's contacts with Florida, and instructed the Court to, "[o]n remand, . . . consider all of [YII Shipping's] business contacts with Florida and with the rest of the United States in determining whether the base of operations requirement as well as all other factors have been fulfilled pursuant to *Rhoditis*.[2]" (Mandate 15[3] (citation omitted)). The Court now addresses this task and re-examines Defendant's Renewed Motion to Dismiss [ECF No. 49].

## II. LEGAL STANDARD

A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). The plaintiff must show that venue in the chosen forum is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citations omitted). For its part, the defendant invoking *forum non conveniens* "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 69 (11th Cir. 2009) (quotation omitted). Although "the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (citation omitted), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

---

[2] *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).

[3] Except for paginated depositions, the Court employs the page numbering assigned by the Court's Electronic Case Management System.

### III. ANALYSIS

It is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable. *See Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir. 1983) ("'[I]f United States law is applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal.'" (quoting *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 315 (5th Cir. 1980)) (emphasis removed)); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 899 (11th Cir. 2004) (noting the Supreme Court suggests in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23 (2004), that for a court to apply admiralty law, it must first have admiralty jurisdiction). The Court's admiralty jurisdiction is not at issue here. The sole matter the Court must address, then, before proceeding with a traditional *forum non conveniens* analysis, is whether United States maritime law applies to this case. Because this choice of law question is a threshold issue to determining whether this case should be dismissed for *forum non conveniens*, Plaintiff carries the burden of demonstrating United States maritime law is applicable. *See Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

The Supreme Court has set out several factors to determine when courts should apply the maritime law of the United States, including the Jones Act and the Death on the High Seas Act. *See Rhoditis*, 398 U.S. at 308–10; *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381–84 (1959); *Lauritzen v. Larsen*, 345 U.S. 571, 582–93 (1953). *Lauritzen* identified seven relevant factors: (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the defendant shipowner, (5) place of contract, (6) inaccessibility of a foreign forum, and (7) law of the forum. *See* 345 U.S. at 582–93. The final *Lauritzen* factor, law of the forum, "is entitled to little weight because 'fortuitous circumstances . . . often

determine the forum.'" *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985) (quoting *Lauritzen*, 345 U.S. at 590–91) (alteration in original). In addition, courts must consider whether the defendant has a base of operations in the United States. *See Rhoditis*, 398 U.S. at 309. These factors are not an exhaustive list, and the test is not a mechanical one. *See Szumlicz*, 698 F.2d at 1195 (citing *Rhoditis*, 306 U.S. at 308–09).

Plaintiff does not discuss each of the *Rhoditis/Lauritzen* factors, but rather focuses solely on the *Rhoditis* base of operations factor.[4] (*See generally* Resp.). Case law cautions that the base of operations factor should not be dispositive of the choice of law inquiry. *See Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015, 1018 (5th Cir. 1981) ("[E]ven assuming a U.S. base of operations, the substantiality of the contacts herein with Nigeria warrants the non-application of American law. We are unable to state, and *Rhoditis* in fact does not command us to hold, that the shipowner's base of operations is the sole controlling factor in a choice-of-law decision." (footnote call number and citation omitted and italicization added)), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1169 (5th Cir. 1987). Nevertheless, the Eleventh Circuit "has stated in dicta that '[i]f the defendants have a *substantial* base of operations in the United States, this factor alone *can* justify the application of United States law.'" *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1176 (11th Cir. 2009) (quoting *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 936 (11th Cir. 2005)) (alterations in original) (some emphasis added).

---

[4] Additionally, the Court has held the seven *Lauritzen* factors "weigh heavily against applying the maritime law of the United States, including the Jones Act." (Order dated Oct. 28, 2011, at 25). The Eleventh Circuit's Mandate does not require the Court to reconsider its evaluation of these factors except to the extent the Court's inquiry is affected by its re-examination of Defendant's contacts with the United States. Only the fourth factor, the allegiance of the shipowner, might possibly be impacted by the Court's current review, as a substantial base of operations in the United States might color the shipowner's allegiance. However, for the reasons explained in the Order, the Court does not find there to be a substantial base of operations in the United States, and therefore its evaluation of the fourth *Lauritzen* factor is unchanged.

Thus, for Plaintiff to carry his burden, he must show not only that Defendant has a base of operations in the United States, but also that such a base of operations is "substantial." Whether a base of operations is "substantial" hinges on an examination of the totality of the circumstances. *See Chiazor*, 648 F.2d at 1019 ("The American-owned Nigerian subsidiary conducting the enterprise might possibly be said to have a base of operations in America, it is true, but, unlike in *Rhoditis*, *supra*, the totality of the circumstances of the case indicate this to be a minor weight in the scales." (italics added)).

Here, YII Shipping is a Bahamian corporation, formed in 1977, with its principal place of business in Nassau, The Bahamas. (*See* V. Higgs Aff. ¶ 2 [ECF No. 14-3]; V. Higgs July 23, 2008 Depo. ("V. Higgs Depo.") 6:10–12 [ECF No. 65-2]). It "operate[s] vessels between USA & Bahamas as well as inter-island." (Resp. Ex. 7 (YII Shipping's application to the U.S. Coast Guard) [ECF No. 61-7]).[5] Between 2005 and 2009, YII Shipping was hired by "dozens of U.S. based companies . . . to ship merchandise from Florida to the Bahamas." (Resp. 10 (citing Resp. Exs. 14(a), (b) (YII Shipping's bills of lading) [ECF Nos. 61-14, 61-15]; Resp. Exs. 15(a), (b) (YII Shipping's cargo manifests) [ECF Nos. 62-1, 62-2])). In order to receive merchandise for shipping, YII Shipping rents warehouse space in Port Everglades, Florida at 1800 Southeast 20th

---

[5] The scope of YII Shipping's operations is evidenced by the company's Application for Vessel Certification to the Department of Homeland Security, United States Coast Guard [ECF No. 61-7], typical service contracts [ECF No. 61-8], company letterhead stating there is weekly service from Port Everglades to The Bahamas [ECF No. 62-5], and an undated third-party internet advertisement, identifying YII Shipping as a shipping company that "sail[s] from Port Everglades[, Florida] every Monday to Governors Harbour, Eleuthera[, The Bahamas]. The name of the boat in the advertisement is 'Yeocomico II'[*]," [ECF No. 61-9]. In the over five-year period between June 24, 2004 and December 13, 2009, YII Shipping's vessels have made 241 visits to United States ports. (*See* Resp. 9 (citing Resp. Exs. 12, 13 [ECF Nos. 61-12, 61-13])).

[*] Notably, the advertisement referencing a "M/V Yeocomico II" was not generated by YII Shipping. However, neither party addresses whether the M/V Yeocomico II is the same vessel as the M/V Yeocomico. Indeed, Plaintiff appears to use the two names interchangeably. (*See, e.g.*, Resp. *passim.*). Accordingly, the Court presumes both "M/V Yeocomico" and "M/V Yeocomico II" refer to the same vessel, which the Court hereinafter refers to as the "M/V Yeocomico," or the "Vessel."

Street, Warehouse Number 4.  (*See* Roca Aug. 3, 2011 Depo. ("Roca Depo.") 83:13–18, 83:21–84:1 (deposition of YII Shipping's corporate representative, Blanca Roca) [ECF Nos. 61-2, 61-3]).

YII Shipping also appears to be associated with an address in Ft. Lauderdale, Florida. For example, an undated third-party internet advertisement lists YII Shipping's "Main Office" address as "1777 S. Andrews Ave. # 200[,] Ft. Lauderdale, Florida 33316."  (Resp. Ex. 9 [ECF No. 61-9]; *see* V. Higgs Depo. 114:23–117:6).  Additionally, in a letter dated August 7, 2007 from YII Shipping, signed by Captain Chuck Deal, the Vessel's "Florida Office" location is listed as "YII Agency Inc.[,] 1777 S. Andrews Ave. Suite 200[,] Ft. Lauderdale[,] Florida 33316," and is accompanied by a Florida phone number.  (Resp. Ex. 16 [ECF No. 62-5]). Defendant instructs customers in shipping instructions to mail invoices to "YII Agency, Inc.[,] 1777 S. Andrews Ave[,] Ft. Lauderdale FLA 33316."  (Resp. Ex. 10, at 3 [ECF No. 61-10] (capitalization omitted)).  Lastly, when listing itself as the "Consignee" on a U.S. Department of Homeland Security Inward Cargo Declaration, YII Shipping provides the same 1777 S. Andrews Avenue address.  (*See* Resp. Ex. 17(b) [ECF No. 62-7]).

Lisbon Higgs ("Lisbon"), a dual citizen of both the United States and The Bahamas, owns two of YII Shipping's five shares, i.e., 40%.  (*See* V. Higgs Depo. 22:9–23; 186:7–11). Lisbon owns property in Florida and is a Florida resident.  (*See id.* 186:2–3).  Lisbon retired from YII Shipping in 2002 and plays no role in YII Shipping's operations.  (*See* V. Higgs Depo. 8:23–24, 20:1–2, 28:10–23; 168:9–15; Vasquez Jan. 9, 2008 Depo. ("Vasquez Depo.") 91:15–17 [ECF No. 65-1]).  Lisbon's son, Vaughn Higgs ("Vaughn"), now runs YII Shipping.  (*See* V. Higgs Depo. 10:15–25).   The remaining shareholders of YII Shipping, Vaughn and two other individuals who each own one share, are Bahamian citizens.  (*See id.*; *id.* 7:14–16; 186:12–14).

Vaughn, who lives in The Bahamas, maintains a phone number and mailing address in Florida for personal use. (*See id.* 152:4–20; 184:14–18).

In 1999, while in Fort Lauderdale, the then-active Lisbon contacted Vasquez about employment with YII Shipping. (*See* Vasquez Depo. 91:21–23). Vasquez, a resident of the Dominican Republic (*see* Compl. ¶ 2), was interviewed and hired in Port Dania, Florida, and first joined one of YII Shipping's vessels in Florida. Plaintiff worked for YII Shipping aboard one of its cargo ships, the M/V Yeocomico ("Vessel"), which is flagged in Honduras. (*See* V. Higgs Aff. ¶ 4).[6] Since 2005, the Vessel has sailed exclusively in Bahamian waters in inter-island cargo traffic. (*See* Resp. Exs. 12, 13 [ECF Nos. 61-12, 61-13] (YII Shipping's Bills Summary and a document produced by the Port Everglades authorities, both indicating the M/V Yeocomico's final departure from the United States was April 4, 2005); *see also* V. Higgs Aff. ¶ 4; V. Higgs Depo. 56:18–57:2; Maldonado Nov. 20, 2009 Depo. ("Maldonado Depo.") 7:19–8:6 (deposition of the President of St. John's Shipping Company, which had done business with YII Shipping) [ECF No. 62-6]; Vasquez Depo. 13:4–21).

Vasquez was injured[7] aboard the Vessel — while it was docked in Freeport, The Bahamas — on June 21, 2007, over one year after the Vessel began exclusively sailing inter-island routes. (*See* Compl. ¶ 19 [ECF No. 1]). After departing the Vessel, Plaintiff was treated in Florida at his own expense. (*See* Resp. 2; Compl. ¶ 33). Vasquez's operative employment contract at the time of the injury was entered into in The Bahamas, as were contracts during the years immediately preceding his accident. (*See* Vasquez Depo. 87:15–23, 108:1–5).

---

[6] Although Plaintiff's Complaint states only that the "[V]essel was registered in a flag of convenience country" (Compl., ¶ 6), Plaintiff does not object to Defendant's representation that the Vessel was registered in Honduras. (*See* Mot. 1; *see generally* Resp.).

[7] While working on the main deck of the Vessel with a gas-powered acetylene gun, Plaintiff suffered burn injuries when the acetylene tank exploded and caught fire. (*See* Compl. ¶ 19).

Plaintiff argues the facts demonstrate YII Shipping has a substantial base of operations in the United States, justifying the application of United States maritime law. The Court addresses Plaintiff's arguments in turn before examining the totality of the circumstances presented.

**A. Ownership of YII Shipping**

Vasquez asserts that Lisbon's and Vaughn's collective 60% ownership of YII Shipping "alone should be dispositive of the instant issue." (Resp. 6). The Court disagrees. It is plain that Vaughn has minimal ties to the United States and Florida. First, he resides in The Bahamas and is not a United States citizen. Second, cases cited to by Plaintiff concern either a shareholder's United States citizenship or state residency (*see* Resp. 6–7 (cases cited)), neither of which exists with Vaughn. The Court notes Vaughn maintains a Florida phone number and mailing address for personal use; however, Plaintiff does not explain why these facts render Vaughn's relationship with Florida analogous to that of a resident.

After excluding consideration of Vaughn's ownership, only Lisbon's 40% ownership of YII Shipping remains. Plaintiff cites to three cases for the proposition that United States citizenship or state residency of the largest shareholder of a defendant shipowner is "sufficient in and of itself to support jurisdiction under the Jones Act." (Resp. 6–7 (citing *Antypas v. Cia. Maritima San Basilio, S. A.*, 541 F.2d 307, 310 (2d Cir. 1976); *Rhoditis*, 398 U.S. 306; *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1351 (S.D. Fla. 2004)). The cases do not so hold.

In *Antypas*, four individuals held stock in the defendant company, and three of the four stockholders were United States citizens. *See* 541 F.2d at 309 & n.5. Based on these facts, the Second Circuit observed that where "[i]t appears that at least some of the stockholders of the shipowner . . . are American citizens," such contact can be "sufficient to support jurisdiction

8

under the Jones Act." *Id.* at 310 (citation omitted). In this matter, there are four stockholders of YII Shipping, three of whom are Bahamian citizens. Thus, there are not "some" stockholders who are United States citizens; there is but a single individual who is — Lisbon.

*Rhoditis* similarly does not support Plaintiff's position. In that case, more than 95% of a defendant corporation's stock was owned by a single individual who was a United States domiciliary, and that individual actively managed the corporation out of New York. *See* 398 U.S. at 307. Moreover, the *Rhoditis* Court did not rely solely on the stockholder's domicile to conclude the Jones Act applied. For example, the Court noted in its analysis that the plaintiff's injury occurred in the United States. *See id.* at 310. In contrast, here, Lisbon no longer runs YII Shipping; his 40% ownership share falls far short of the nearly complete ownership exhibited in *Rhoditis*; and Vasquez's injury occurred in The Bahamas.

*Williams* is also distinguishable. There, 99% of the shipowner was owned by Carnival, which had a principal place of business in Florida. *See* 320 F. Supp. 2d at 1350; *see also id.* at 1350–52 (discussing the court's earlier order denying the defendants' motion to dismiss, *Williams v Cruise Ships Catering* (*Williams I*), 299 F. Supp. 2d 1273 (S.D. Fla. 2003), and concluding even if the court considered newly filed evidence in support in the defendants' motion for reconsideration, the decision to deny dismissal was proper.). By Carnival's own representations, such a high percentage of its ownership of another company "typically evidences a 'significant influence over financial and operating policies.'" *Id.* at 1351 (citation omitted). Further, a Florida resident and other members of his family and trusts created for their benefit owned shares representing 44% of the voting power of Carnival. *See Williams I*, 299 F. Supp. 2d at 1275. Although the court noted several additional points supporting its finding that

the shipowner and other defendants had a substantial relationship with the United States,[8] the court found these facts particularly persuasive. *See id.* at 1283 & n.10. Here, there is no overwhelming ownership of YII Shipping by an entity or individual that makes business decisions in the United States. Rather, as previously observed, Lisbon's ownership is but 40%, and although he resides in Florida, he has not made any of YII Shipping's operational decisions since retiring in 2002.

### B. YII Shipping's Volume of Business from the United States

Plaintiff next contends that YII Shipping's business of shipping merchandise from Florida to the United States over the past seven years is sufficient ground for the Court to find Defendant has a substantial base of operations in the United States. (*See* Resp. 10). Specifically, Plaintiff asserts that YII Shipping's volume of business is essentially the same as that considered in *Szumlicz v. Norwegian American Line, Inc.*, 698 F.2d 1192 (11th Cir. 1983), where, according to Plaintiff, the court "held that [the d]efendant maintained a substantial base of operations in the United States[] because one of its vessels called at Port Everglades, Florida, every two weeks." (Resp. 10 (emphasis removed)).

In *Szumlicz*, the district court determined that dismissal of the case on grounds of *forum non conveniens* was unwarranted because it concluded American law applied "'based upon a finding that the defendants conducted substantial business in United States ports and that plaintiff was treated for his medical condition in the United States while serving aboard defendant's vessel and in their employment.'" 698 F.2d at 1195. On appeal, the Eleventh Circuit affirmed the district court's determination, as the decision whether "the defendant

---

[8] For example, the court specifically noted the plaintiff received treatment for the injuries at issue in Ft. Lauderdale, Florida during one of the ship's scheduled stops. *See Williams I*, 299 F. Supp. 2d at 1276, 1284 n.12. The treatment Vasquez received in Florida, in contrast, was not obtained during the course of the Vessel's voyage, but rather was sought by Vasquez at his own expense after leaving the Vessel. (*See* Resp. ¶ 4).

shipowner had a substantial base of operations in the United States is a factual finding that should not be disturbed on review unless clearly erroneous. So tested we find no reversible error." *Id.* at 1196.

Plaintiff misapprehends the applicability of *Szumlicz*. The district court's ruling was not based solely on the defendant's "substantial business conducted in United States ports." In other words, *Szumlicz* does not support Plaintiff's proposition that substantial business alone is dispositive of the substantial base of operations inquiry. Indeed, the *Szumlicz* district court specifically noted its conclusion was also based on the fact that the plaintiff was treated in Fort Lauderdale, Florida during the course of his service aboard the vessel. *See id.* at 1195. As previously noted, such is not the case here, as Vasquez was only treated in Florida at his own expense after departing the Vessel.

Thus, Defendant's business of shipping goods from Florida to The Bahamas is not the start and end of the Court's inquiry, but rather will be considered along with the totality of the circumstances in determining whether Defendant maintains a substantial base of operations in the United States. With respect to the extent of YII Shipping's business in the United States, the Court observes only approximately 15% of Defendant's income is derived from shipping between the United States and The Bahamas. (*See* V. Higgs Depo. 123:23).

### C. Piercing the Corporate Veil[9]

Vasquez tries to persuade the Court to pierce YII Agency's corporate veil and allow consideration of YII Agency as YII Shipping's "Florida entity/office." (Resp. 10–21 & n.24). In support of his argument, Plaintiff relies on the Supreme Court's observation in *Rhoditis* that "[i]f . . . the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be

---

[9] In this section, the Court largely repeats facts and discussion contained in the October 28 Order. (*See* Order dated Oct. 28, 2011, at 28–31).

11

Case 0:11-cv-60248-CMA   Document 84   Entered on FLSD Docket 12/10/2012   Page 12 of 17

Case No. 11-60248-CIV-ALTONAGA/Simonton

considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States." 398 U.S. at 310. Specifically, Plaintiff asserts that YII Agency, as an independent and separate entity from YII Shipping, is a "'facade' which should be disregarded." (Resp. 21).

As a preliminary matter, the Court observes that the operational "facade" disapproved of by the Supreme Court in *Rhoditis* did not concern the corporate veil, but rather related to the citizenship of a 95% individual owner of a defendant corporation that managed the ship. The *Rhoditis* Court held that the 95% owner — who was a long-time resident alien of the United States and therefore was afforded "the same constitutional protections of due process that we accord citizens," and who also operated the corporation from the United States — could not hide behind his non-U.S. citizenship to avoid the applicability of the Jones Act. 398 U.S. at 310.

In contrast, Plaintiff urges the Court to find that a corporation that maintains an office in Fort Lauderdale — YII Agency — is one and the same as the Defendant shipowner, YII Shipping. Thus, it is not *Rhoditis* that guides the Court's inquiry, but rather Florida law. To pierce the corporate veil in Florida, a claimant must establish:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Coursen v. JP Morgan Chase & Co.*, No. 8:12–cv–690–T–26EAJ, 2012 WL 3055857, at *3 (M.D. Fla. July 25, 2012) (citing *Eckhardt v. United States*, 463 F. App'x 852, 855–56 (11th Cir. 2012)).

Through discovery, Vasquez has collected a number of documents which he maintains show "YII Shipping has continuously maintained a permanent office and/or base of operations in

Florida." (Resp. 21). The first category of evidence is letterhead purportedly listing YII Shipping's "Florida Office" as YII Agency.[10] (*Id.* 12; Resp. Ex. 16). The letterhead provides a Florida address for YII Agency as well as a Florida telephone number. (*See* Resp. Ex. 16). The next cited document is YII Shipping's declaration made to the U.S. Department of Homeland Security. (*See* Resp. 12 (citing Resp. Ex. 17 [ECF No. 62-7])). Plaintiff also submits advertisements showing YII Shipping as having a Florida office (at YII Agency's address). (*See id.*; Resp. Exs. 9, 10[11] [ECF Nos. 61-9, 61-10]). The advertisement in Exhibit 9 was not generated by YII Shipping and incorrectly states YII Shipping is St. John's Shipping Company. (*See* Resp. Ex. 9; V. Higgs Depo. 114:23–117:6). YII Shipping and St. John's shipping are separate companies; Plaintiff does not argue they are the same. (*See* Resp. 21–22 (asserting YII Shipping has done business with St. John's Shipping Company); Maldonado Depo. 15:18–23). These advertisements demonstrate a tenuous link to YII Agency's address, at best.

Vasquez also relies on the deposition of YII Agency's representative, Blanca Roca. (*See* Resp. 13–23). Through Roca, Vasquez shows that YII Agency works solely for YII Shipping (*see id.* 13; Roca Depo. 101:21–102:9); Lisbon owns YII Agency (*see* Resp. 14; Roca Depo.

---

[10] The letterhead does not precisely support Plaintiff's argument. The letterhead is for the M/V Yeocomico, not YII Shipping itself. (*See* Resp. Ex. 5). The letterhead states the M/V Yeocomico has two offices — YII Shipping and YII Agency. (*See id.*). This is slightly different from YII Shipping stating *it* has an office in Florida. The letterhead simply states that the M/V Yeocomico (at one point), shipped from Nassau to Ft. Lauderdale. Finally, the letterhead is outdated because it is undisputed that the M/V Yeocomico no longer travels to Florida, but is solely engaged in inter-Bahamian shipping. (*See* Resp. Ex. 12 [ECF No. 61-12]). Furthermore, it lists YII Agency's former address; YII Agency moved from the 1777 South Andrews Avenue address years ago. (*See* Roca Dep. 45:8–24).

[11] The advertisement in Exhibit 10, like the letterhead, is an ad for the M/V Yeocomico. (*See* Resp. Ex. 10). The advertisement states that the vessel has an agent in Nassau and Ft. Lauderdale. That the M/V Yeocomico has two agents does not mean those agents are agents of each other, or are in a principal-agent relationship. Plaintiff fails to provide any further grounds upon which the Court could attempt to unravel the relationship between the M/V Yeocomico, YII Shipping, and YII Agency.

13

15:16–21); Lisbon signs YII Agency's office leases[12] (*see* Resp. 14; Roca Depo. 59:3–60:1; Resp. Ex. 21 [ECF No. 62-11]); Vaughn deals with YII Agency's bank account (*see* Resp. 14–17; Roca Depo. 30:22–38:18, 37:5–43-12; [ECF Nos. 58–58-4]); and YII Shipping funds YII Agency[13] (*see* Resp. 16–18; Roca Depo. 37:5–43:12). Plaintiff asserts because YII Agency works only for YII Shipping, Roca's services are performed for YII Shipping (*see* Resp. 16; Roca Depo. 20:22–22:19, 101:21–102:9), and Vaughn controls YII Agency (*see* Resp. 17–18; Roca Depo. 46:10–47:12, 94:6–97:16, 101:4–10, 103:14–104:2). Notably, however, YII Shipping does not direct Roca's rate calculations (*see id*. 14:16–24), and Roca does not report to Lisbon (*see id.* 15:16–25).

These facts presented by Plaintiff fall far short of demonstrating that YII Agency is the alter ego of YII Shipping. Plaintiff wholly fails to discuss what fraudulent or improper purpose

---

[12] Plaintiff calls attention to the lease between YII Agency and the landlord, which has a forum-selection clause designating Broward County, Florida, as the venue for any lease disputes. (*See* Resp. 14). Plaintiff invites the Court to find that because of that forum-selection clause, somehow YII Shipping (or even YII Agency for other disputes not involving the lease) should be forced to litigate in Broward County. Vasquez does not maintain he is a party or intended third-party beneficiary to any of the lease contracts. The Court has rejected an identical argument — trying to impute a forum-selection clause to non-parties to the contracts — in another case. *See Schuster v. Carnival Corp.*, No. 10-21879-civ-Altonaga, at 23–27 (S.D. Fla. Feb. 3, 2011) (docket entry 111); *Schuster v. Carnival Corp.*, No. 10-21879-CIV, 2011 WL 541580, at *6–7 (S.D. Fla. Feb. 8, 2011) (Altonaga, J.).

[13] The Court is unsure why Plaintiff highlights this fact, as it supports Defendant's version of events. If YII Agency is performing services for YII Shipping, YII Shipping has to pay for those services. If YII Shipping did not pay YII Agency for services performed, that might support an alter-ego theory. It is therefore unsurprising that YII Agency is funded by YII Shipping — it is YII Agency's sole client. This is confirmed by Roca, who invoices YII Shipping, which then pays the invoices. (*See* Roca Depo. 38:6–18). Taking Plaintiff's argument to the extreme, any entity that pays another entity for goods or services would be "funding" the second entity, potentially opening itself up to liability as an alter ego. A person or company is allowed to incorporate a second, separate, entity for the purposes of limiting liability; that is the basis for the corporate form. *See Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp*., 483 F.2d 1098, 1102 (5th Cir. 1973) ("[L]imited liability is one of the principal purposes for which the law has created the corporation."); *After Dark, Inc. v. United States*, No. 67-272-Civ-T, 1969 WL 179, at *3 (M.D. Fla. Dec. 4, 1969) ("The incorporation of a business to insulate its assets, or stated another way, to limit liability, is, under the law, a legitimate business purpose."). So long as the companies remain separate and observe corporate formalities, they are separate for legal purposes, even if the second company performs services solely for the first.

was furthered by the creation of YII Agency's corporate form, let alone how such fraudulent or improper use *caused* Vasquez's injury. *See Coursen*, 2012 WL 3055857, at *3. Indeed, under Florida law, "the corporate veil may not be pierced absent a showing of improper conduct." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). As that showing is absent here, the inferences Plaintiff urges the Court to make based on facts such as the companies' overlapping shareholder and association with similar addresses, is insufficient as a matter of law to pierce the corporate veil.

### D. Totality of the Circumstances

Plaintiff raises other facts for the Court's consideration regarding YII Shipping's base of operations: (1) Plaintiff was initially recruited for employment by Defendant in Florida, and initially commenced work in Florida in 1999; and (2) Defendant's insurance policy, issued by an Ohio-based company, covers Florida and its territorial waters.[14] Previously discussed facts supporting Plaintiff's position include Lisbon's status as a United States citizen and Florida resident, and his 40% ownership of YII Shipping; and YII Shipping's maintenance of a warehouse in Florida to receive cargo for shipment between Florida and The Bahamas for Florida-based and United States-based entities.

The Court agrees these facts may support a finding that YII Shipping maintained some base of operations in the United States. However, given the totality of the circumstances, the

---

[14] Vasquez also asserts YII Shipping previously "sought the protections and benefits of U.S. courts" (Resp. 23), which bears on the Court's examination of Defendant's substantive contacts with the United States. As previously noted in the October 28 Order, Vasquez points to a decade-old case where YII Shipping and the M/V Yeocomico were sued. (*See id.*); *Merrill Stevens Dry Dock Co. v. M/V Yeocomico II*, No. 98-cv-01276-Brown (S.D. Fla. filed June 5, 1998). There, YII Shipping and the M/V Yeocomico were defendants; they then counterclaimed and appealed. *See Merrill Stevens Dry Dock Co.*, No. 98-cv-01276-Brown, Docket. YII Shipping and the M/V Yeocomico did not seek the protections and benefits of the U.S. courts; the plaintiff did. The fact that YII Shipping and the M/V Yeocomico were sued in this District in 1998 has little substantive effect on whether YII Shipping has sufficient contacts with the United States.

Court does not find Defendant maintained a *substantial* base of operations in the United States. *See Chiazor*, 648 F.2d at 1019. Plaintiff's operative employment contract at the time of his injury (in addition to contracts covering years preceding his injury) was entered into in The Bahamas. Only 15% of Defendant's income is derived from its Florida to The Bahamas shipping route. In the years preceding Vasquez's injury, YII Shipping was run by Vaughn from The Bahamas. Sixty percent of Defendant's stock is held by Bahamian citizens, and the remaining 40% is held by Lisbon, a United States citizen and resident who, since five years prior to the July 2007 incident, has made no operational decisions. And notably, for at least a year prior to Vasquez's injury, the M/V Yeocomico serviced solely Bahamian inter-island routes, and Vasquez was treated in Florida for his injuries only after departing the Vessel. For these reasons, the Court finds Plaintiff has failed to establish that Defendant had a substantial base of operations in the United States.

### E. *Forum Non Conveniens*

As Plaintiff has failed to demonstrate Defendant maintained a substantial base of operations in the United States, and as the other seven *Lauritzen* factors weigh against Plaintiff's position, the Court concludes United States law does not apply to this case. Accordingly, the matter may be dismissed upon a consideration of traditional *forum non conveniens* factors. The Court previously engaged in such an analysis (*see* Order dated Oct. 28, 2011, at 32–37), an analysis which was not disturbed by the Eleventh Circuit's Mandate. Accordingly, it is adopted here, and the Court concludes the United States is not a "convenient" forum.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1) The Motion **[ECF No. 49]** is **GRANTED**.

2) This case is **DISMISSED**, and all pending motions are **DENIED AS MOOT**.

The Clerk of the Court is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of December, 2012.

                                            *[signature: Cecilia M. Altonaga]*
                                            **CECILIA M. ALTONAGA**
                                            **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record